IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES HARRIS and UNIQUE PRODUCTS AND SERVICES,** | : | CIVIL ACTION |
| **Plaintiffs,** | : : : | |
| v. | : | NO. 10 - 5655 |
| **OPRAH WINFREY and THE OPRAH WINFREY SHOW, d/b/a HARPO PRODUCTIONS INC.,** | : : : : | |
| **Defendants.** | : : | |

**DuBOIS, J.**                                                                                                            **March 18, 2011**

**M E M O R A N D U M**

**I.      INTRODUCTION**

This is a copyright infringement action in which the plaintiffs, Charles Harris and his company, Unique Products and Services, allege that Oprah Winfrey, individually and through her production company, Harpo Productions, infringed Harris's copyright in a booklet titled "How America Elects Her Presidents."  The Complaint asserts a federal claim for copyright infringement under 17 U.S.C. § 101 et seq. (Count I), and state law claims for tortious conversion (Count II), unjust enrichment (Count III), and quantum meruit (Count IV).

Presently before the Court are defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendants' Motion for Rule 11 Sanctions.  For the reasons that follow, the Court grants defendants' Motion to Dismiss, dismisses the Complaint with prejudice, and denies defendants' Motion for Rule 11 Sanctions.

## II. BACKGROUND[1]

Harris alleges that he holds a copyright in a booklet titled "How America Elects Her Presidents," an assembly of historical information relating to voting, elections, and presidential trivia. (Compl. Ex. 9; Defs.' Supplement to Mot. to Dismiss Ex. A.) As proof of Harris's copyright, plaintiffs attached as exhibits to the Complaint a Certificate of Registration from the U.S. Copyright Office dated January 6, 2000 for a work titled "How America Elects It's [sic] Presidents," and two acknowledgment letters received from the Democratic and Republican National Committees. (Compl. Exs. 1-3.) During Barack Obama's 2008 presidential campaign, Harris allegedly sent ten copies of this booklet to The Oprah Winfrey Show, along with a letter stating that the booklet would be "a great addition to the campaign" and would "help people remember and to discuss Senator Obama." (Compl. Ex. 4.)

Plaintiffs allege that, on February 16, 2009, Winfrey read certain questions "verbatim" from Harris's booklet. (Compl. ¶ 19.) According to plaintiffs, Oprah had "developed" the contents of the February 16 episode based on Harris's booklet, (Compl. ¶ 20), and "copied questions" directly from his copyrighted material. (Compl. ¶ 21.) Plaintiffs attached to the Complaint a portion of the booklet with portraits and biographical facts, including a description of William Howard Taft as the "Heaviest President" at 354 pounds. (Compl. Ex. 9.)

On October 26, 2010, plaintiffs filed this action alleging copyright infringement under 17

---

[1] On a motion to dismiss, courts may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

U.S.C. § 101 et seq., and state law claims of tortious conversion, unjust enrichment, and quantum meruit. (Compl. ¶¶ 24-46.) Defendants responded with a motion to dismiss, attaching a copy of the transcript from the episode at issue titled "Oprah's Search for the World's Smartest and Most Talented Kids." (Defs.' Mot. to Dismiss Ex. 1.) The transcript reveals that Oprah asked "little Graham," a six-year-old presidential history buff, "[W]hich one of our presidents weighed the most?" (Id. at 12.) Graham responded "William Howard Taft," and stated that Taft weighed 327 pounds. (Id.) While plainitffs contend that Winfrey also infringed Harris's copyright by posing questions based on various other presidential facts contained in the booklet (Compl. Ex. 8 at 3), these topics do not appear in the transcript. (Defs.' Mot. to Dismiss Ex. 1.)

Defendants supplemented their motion to dismiss on December 20, 2010, this time including a copy of Harris's copyrighted booklet obtained from the U.S. Trademark office. (Defs.' Supplement to Mot. to Dismiss Ex. A.) The material does not contain the pages Harris included as part of his original Complaint, although it does contain a table listing Taft as the heaviest President at 354 pounds. (Id. at 7.) This booklet, like plaintiffs' original submission, does not contain any material formatted as a question.

## III. MOTION TO DISMISS

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal

quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

B. Analysis

Defendants assert that plaintiffs' federal claim must fail since the alleged infringement concerns only historical facts which are not copyrightable. The remaining state law claims, defendants urge, should be dismissed as preempted by Section 301 of the Copyright Act. The

Court will address each argument in turn.

  1.  *Plaintiffs' Federal Claims*

To state a claim for copyright infringement, a plaintiff must prove both (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Plaintiffs' claim fails under the second prong, as the alleged infringement concerns only historical facts, which are not copyrightable.[2] See Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 545 (1985).

Copyright law protects only an author's original expression; historical facts and information in the public domain are not copyrightable. Id. at 547-48 ("[N]o author may copyright facts or ideas."); see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191, 199 n.5 (3d Cir. 2003) ("[C]opyright protection does not include facts and ideas, but only their expression."). There is "thin" copyright protection for an author's choices as to the presentation of factual matter. Feist, 499 U.S. at 348. This protection, however, is limited to the author's original, creative contributions, since copyright "protects only the elements that owe their origin to the compiler—the selection, coordination, and arrangement of facts." Id. at 359. In Feist, for example, the Supreme Court refused to extend copyright protection to a utility company's aggregation of telephone directory information, holding that neither the "raw data" nor the manner in which it was presented qualified as original. Id. at 361.

The material plaintiffs seek to protect here is not original. Plaintiffs argue that Winfrey infringed Harris's copyright in his booklet by referring to an historical fact, President Taft's

---

[2] Although the parties dispute whether Harris held a valid copyright in the booklet, the Court need not address this issue. Given that the purported infringement concerns uncopyrightable historical facts, the validity of Harris's copyright is irrelevant.

weight. (Compl. ¶ 21.) Winfrey's use of this fact, even if she learned it from Harris's booklet, does not infringe any copyright Harris may have held. This information is not original to Harris, but rather is a piece of "raw data" that preexisted Harris's booklet and is available from numerous external sources.

Plaintiffs also argue that Oprah infringed the manner in which the facts were presented by copying verbatim the way in which Harris "framed the questions." (Pls.' Resp. to Defs.' to Mot. Dismiss 5.) While the two versions of Harris's booklet presented to the Court do have some hallmarks of originality, neither contains any material in question format. Thus, the framing to which plaintiffs refer, even if copyrightable, is not implicated in this case.

Since plaintiffs have failed to state a copyright claim upon which relief can be granted, the Court grants defendants' motion to dismiss plaintiffs' federal claim, and dismisses Count I of plaintiffs' Complaint with prejudice.

2. *Plaintiffs' State Law Claims*

Plaintiffs also seek damages under state law for tortious conversion, unjust enrichment, and quantum meruit in Counts Two, Three, and Four of the Complaint. (Compl. ¶¶ 31-46.) The Court notes, as a threshold matter, that under Pennsylvania law, "[u]njust enrichment is a synonym for quantum meruit." Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc., 933 A.2d 664, 667 (Pa. Super. Ct. 2007). Quantum meruit merely provides an equitable remedy to compensate for the reasonable value of services lost due to unjust enrichment. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 531 n.8 (Pa. 2010). Thus, the Court need only analyze plaintiffs' claims for conversion and unjust enrichment. Both claims are preempted by Section 301 of the Copyright Act.

The Copyright Act preempts state common law or statutory claims that fall within the subject matter of copyright, and that create rights equivalent to any of the exclusive rights created by copyright law.³ 17 U.S.C. § 301(a); Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir. 1999). The Third Circuit uses a functional test to determine whether a state claim is equivalent to a federal copyright action, asking whether the state cause of action "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display." Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002) (quoting Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1st Cir. 1994)). If such an element is required, "the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." Id.

Both of plaintiffs' state law claims fall within the subject matter of copyright law and are not qualitatively different from the underlying federal claims. Plaintiffs aver that the defendants "tortuously [sic] converted the contents of Mr. Harris' copyrighted work by virtue of unauthorized appropriation thereof and incorporation of the same in Ms. Winfrey's Q cards," and that "[d]efendants have unjustly secured and will likely continue to secure economic gain and advantage on the basis of their unauthorized possession, control and use of Plaintiffs' copyrighted works." (Compl. ¶¶ 32, 38.) The right plaintiffs seek to protect—power to control and use the allegedly copyrighted booklet—is the functional equivalent of the exclusive rights granted by Section 106 of the Copyright Act to copy and distribute copyrighted materials. See,

---

³ Section 106 of the Copyright Act lays out the exclusive rights that belong to copyright holders, including reproduction, preparation of derivative works, and distribution by sale, rental, lease or lending. 17 U.S.C. § 106.

e.g., Sims v. Viacom, Inc., No. 09-3521, 2009 WL 3856667, at *4 (E.D. Pa. Nov. 17, 2009) (finding state claim of conversion preempted by Copyright Act); Live Face on Web, LLC v. Howard Stern Prods., Inc., No. 08-2579, 2009 WL 723481, at *5 (E.D. Pa. Mar. 17, 2009) (finding state claims of unjust enrichment preempted by Copyright Act). Plaintiffs' claims for conversion and unjust enrichment do not require proof of an extra element beyond "mere copying," and are substantively indistinguishable from plaintiffs' claim for copyright infringement.

Since plaintiffs have failed to plead facts implicating rights beyond those protected by the Copyright Act, their state law claims are not qualitatively distinct from the federal law claims and are thus preempted by Section 301 of the Copyright Act. Consequently, the Court dismisses plaintiffs' state law claims asserted in Counts II, III, and IV of the Complaint with prejudice.

## IV. MOTION FOR RULE 11 SANCTIONS

### A. Legal Standard

Federal Rule of Civil Procedure 11(b) requires attorneys to conduct a reasonable inquiry into the underlying facts and law prior to filing a document with the Court. Sanctions may be imposed on attorneys who fail to read the pleadings, fail to make a reasonable inquiry into the factual and legal legitimacy of a pleading, or file a pleading for an improper purpose. See Fed. R. Civ. P. 11(c); Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994). A district court must analyze the attorney's conduct to determine if it was "reasonable under the circumstances," defined as an "objective knowledge or belief at the time of the filing" that the claim was "well-grounded in law and fact." Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991) (quoting Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1359 (3d Cir. 1990)). In

general, sanctions are only appropriate in the "exceptional circumstance" in which a claim or motion is patently frivolous or without merit. Id. The court should examine the conduct based on what was reasonable to believe at the time of the pleading, and should "avoid using the wisdom of hindsight." CTC Imps. & Exps. v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991).

B. Analysis

The Court concludes that plaintiffs' claims were reasonable under the circumstances. While the Court now rules that the Complaint failed to state a claim upon which relief can be granted, this conclusion does not establish that plaintiffs failed to conduct a reasonable inquiry into the underlying factual and legal basis for the Complaint. "Litigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment . . . Substantially more is required." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987). The Court finds that the exceptional circumstances Rule 11 is designed to address are not present in this case. Thus, the Court denies defendants' motion for sanctions.

V. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss is granted, plaintiffs' Complaint is dismissed with prejudice, and defendants' Motion for Rule 11 Sanctions is denied. An appropriate order follows.